UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAVION PARSON,

        Plaintiff,

v.

        Case No. 3:18-cv-913-J-34MCR

D. VANALLEN, et al.,

        Defendants.

**ORDER**

**I. Status**

Plaintiff Davion Parson, an inmate of the Florida penal system, initiated this action on July 26, 2018, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1) with exhibits (Docs. 1-1 through 1-3). In the Complaint, Parson asserts claims pursuant to 42 U.S.C. § 1983 against Defendants D. Vanallen, C. Lavoie, S. Thompson, R. Robert, S. Douglass, E. Duncan, T. Hewitt, B. Warner, C. Williams, T. Beard, and G. Espino.[1] He also filed a Declaration (Doc. 5) in support of the Complaint. He alleges that Defendants Vanallen, Lavoie, Thompson, Robert, Douglass, Duncan, Hewitt, Warner, and Williams violated his Eighth Amendment right when they used excessive force against him on November 21, 2017, at Florida State Prison. Additionally, he asserts that Defendant Espino failed to

---

[1] Parson also named C. Collins as a Defendant, but the Court dismissed the claims against C. Collins on May 7, 2019. See Order (Doc. 36).

correct the misconduct and documented false information in the medical record, and Defendant Beard stapled his facial wounds closed without cleaning and numbing the area. As relief, he requests monetary, injunctive, and declaratory relief.

This matter is before the Court on Defendants Espino and Beard's Motion to Dismiss (Motion; Doc. 53). They submitted exhibits in support of the Motion. See Doc. 53-1.[2] The Court advised Parson that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter and gave him an opportunity to respond. See Order (Doc. 11). Parson filed a response in opposition to the Motion. See Response to Defendants Espino and Beard's Motion to Dismiss (Response; Doc. 54). Thus, Defendants' Motion is ripe for review.

## II. Plaintiff's Allegations[3]

Parson asserts that Defendant Vanallen escorted him to the doctor's office on November 21, 2017, to consult with Defendant Espino about pain in his lower back, head, neck and left cheekbone. See Complaint at 5. He states that as he was explaining his injuries to Espino, Vanallen screamed "what are you doing Mr. Parson pulling out a knife on the doctor." Id. According to Parson, Defendant Vanallen, later accompanied by

---

[2] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[3] The Complaint is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved. Additionally, because this matter is before the Court on a motion to dismiss filed by Espino and Beard, the Court's recitation of the facts will focus on Parson's allegations as to these Defendants.

Defendants Thompson, Robert, Duncan, Williams, Warner, Douglass, Lavoie, and Hewitt, then used excessive force against him while he was in hand, waist, and leg restraints. See id. at 5. He avers that Dr. Espino instructed Nurse Beard to staple Parson's facial wounds closed to stop the bleeding. See id. at 7. According to Parson, Beard complied with Espino's instructions, however, she failed to clean the wounds and numb the area before doing so. See id. at 7-8. Parson states that he "received" fourteen staples (five on his right eyebrow and nine under his chin). Id. at 8. He maintains that he complained about the ongoing pain in multiple sick call requests, but never saw a doctor. See id. at 9. Parson complains that he "was only given ibuprofen for the pain." Id. Although Dr. Espino documented in the medical record that FDOC personnel used force because Parson reached for something on his left side, the FDOC never issued a disciplinary report against Parson for the alleged possession of a weapon. See id. Parson believes that Espino made the false notation because he "was told to cover up all tracks." Id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262 63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which

it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an

action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[4] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

## IV. Summary of the Arguments

In the Motion, Defendants Espino and Beard request dismissal of Parson's claims against them because Parson failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing the instant 42 U.S.C. § 1983 lawsuit. See Motion at 4-7. Next, Defendants argue that Parson fails to state plausible Eighth Amendment claims against them, see id. at 7-8, and they are entitled to qualified immunity, see id. at 8-9. They also assert that the Eleventh Amendment bars Parson's claims for monetary damages against them in their official capacities. See id. at 9-10. Finally, they maintain that Parson is not entitled to compensatory and punitive damages under 42 U.S.C. § 1997e(e) because he has not alleged any physical injury resulting from Defendants' acts and/or omissions. See id. at 10-11. In his Response, Parson maintains that he states plausible Eighth Amendment claims against Defendants Espino and Beard. See Response at 1-3.

---

[4] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

## V. Exhaustion of Administrative Remedies

### A. PLRA Exhaustion

The PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before filing an action under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Parson is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[5] 286 F.3d, at 1024. . . .

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only

---

[5] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

6

> limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss or be treated as such if raised in a summary judgment motion. Bryant, 530 F.3d at 1374-75 (citation omitted). The Eleventh Circuit has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081.[6] In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

---

[6] Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008).

## B. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The Florida Department of Corrections (FDOC) provides an internal grievance procedure for its inmates. See FLA. ADMIN. CODE r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. See FLA. ADMIN. CODE r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See FLA. ADMIN. CODE r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the FDOC Secretary. See FLA. ADMIN. CODE r. 33-103.007. However, under specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See FLA. ADMIN. CODE r. 33-103.005(1); 33-103.006(3). Or, an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See FLA. ADMIN. CODE r. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the Secretary. See FLA. ADMIN. CODE r. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for submission of grievances. Generally, the following time limits are applicable. Informal grievances must be received within twenty days from the date on which the incident or action that is

the subject of the grievance occurred. See FLA. ADMIN. CODE r. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See FLA. ADMIN. CODE r. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the Secretary must be received within fifteen days from the date the response to the formal grievance is returned to the inmate. See FLA. ADMIN. CODE r. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." FLA. ADMIN. CODE r. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See FLA. ADMIN. CODE r. 33-103.014(1)(a)-(y). Some of the reasons for returning a grievance are as follows: untimeliness; the grievance "addresses more than one issue or complaint" or "is so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to" or "is not written legibly and cannot be clearly understood" or is a supplement to a previously-submitted grievance that has been accepted for review; and the inmate "did not provide a valid reason for by passing the previous levels of review as required or the reason provided is not acceptable," or "used more than two (2) additional narrative pages." See FLA. ADMIN. CODE r. 33-103.014(1)(a), (b), (c), (d), (f), (h), (q), (t), (u).

### C. Parson's Exhaustion Efforts

Defendants Espino and Beard maintain that Parson failed to properly exhaust his administrative remedies as to the deliberate indifference claims against them before filing the instant § 1983 lawsuit. See Motion 4-7. First, they assert that Parson failed to exhaust

when he bypassed the informal and formal grievance steps at the institutional level and proceeded directly to the Office of the FDOC Secretary when he was required to file a formal grievance of a medical nature at the institutional level. Next, they state that Parson addressed more than one issue in each of the grievance appeals that he submitted to the FDOC Secretary. See id. at 5-6. In support of their position, they submitted the relevant grievance appeals. See Doc. 53-1. In response, Parson asserts that he exhausted his administrative remedies, see Complaint at 9-10, and attached to the Complaint four grievance appeals and their corresponding responses, see Doc. 1-3.

The documents attached to Parson's Complaint reflect that Parson submitted a Request for Administrative Remedy or Appeal (Grievance Log Number 17-6-49536), dated December 4, 2017, to the Office of the FDOC Secretary. See Doc. 1-3 at 2-4. In the grievance, he complained about the November 21st physical altercation with corrections officers, Nurse Beard's medical treatment, Dr. Espino's notation in the medical record, and Nurse Fox's denial of medical care. See id. C. Neel denied the grievance on December 19, 2017, stating:

> Your appeal has been reviewed and evaluated. **The subject of your grievance was previously referred to the Office of the Inspector General.** It is the responsibility of that office to determine the amount and type of inquiry that will be conducted. This inquiry/review may or may not include a personal interview with you. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.
>
> **Your issue regarding inadequate medical treatment is a separate issue and should be grieved as such, also, being initiated at the formal level.**
>
> As this process was initiated prior to the receipt of your appeal, your request for action by this office is denied.

Id. at 1 (emphasis added).

Next, Parson submitted a Request for Administrative Remedy or Appeal (Grievance Log Number 18-6-04661), dated January 9, 2018, to the FDOC Secretary. See Doc. 1-3 at 6-10. In the grievance, Parson complained about retaliation for his participation in the grievance procedure, the November 21st altercation with corrections officers, and Espino and Beard's involvement in the alleged misconduct. See id. A. Johns denied the grievance on February 1, 2018 and provided a response similar to Neel's December 19th response. See id. at 5. The response, however, did not instruct Parson to separately grieve medical issues. See id.

Parson submitted another Request for Administrative Remedy or Appeal (Grievance Log Number 18-6-12510), dated March 18, 2018, to the FDOC Secretary. See Doc. 1-3 at 12-16. In this grievance, Parson again complained about retaliation, the November 21st altercation involving corrections officers, and Espino and Beard's involvement in the wrongdoing. See id. Neel returned the grievance without action on March 23, 2018, stating, in pertinent part:

> Your request for administrative appeal has been received in non-compliance. This office has previously addressed this issue in appeal log number 17-6-49536. We will not redress this issue or your allegations, as there is no provision in the grievance procedure to appeal a decision already rendered by this office.

Id. at 11.

Next, Parson submitted a Request for Administrative Remedy or Appeal (Grievance Log Number 18-6-18538), dated April 23, 2018, to the FDOC Secretary. See

Doc. 1-3 at 18-21. In the grievance, Parson complained about the denial of medical care for post-use-of-force injuries. See id. Neel returned the grievance without action, stating:

> Your request for Administrative Remedy or Appeal has not been filed in compliance with Chapter 33-103.006, Inmate Grievance Procedure. You did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule or the reason for by-passing that level of the grievance procedure is not acceptable.
>
> Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure.

Id. at 17, dated May 4, 2018.

As to the initial step in the two-part process for deciding motions to dismiss for failure to exhaust under the PLRA, the Eleventh Circuit has instructed:

> Deciding a motion to dismiss for failure to exhaust proceeds in two steps: first, looking to the defendant's motion and the plaintiff's response, the court assesses whether dismissal is proper even under the plaintiff's version of the facts; and second, if dismissal is inappropriate under the plaintiff's version of the facts, the court makes "specific findings in order to resolve the disputed factual issues related to exhaustion." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The burden is on the defendant to show a failure to exhaust. Id.

Arias v. Perez, 758 F. App'x 878, 880 (11th Cir. 2019) (per curiam). Accepting Parson's view of the facts as true, a dismissal of the claims against Defendants Espino and Beard for lack of exhaustion is not warranted at the first step. Thus, the Court proceeds to the second step in the two-part process where the Court considers Defendants' arguments regarding exhaustion and makes findings of fact.

A prisoner must exhaust administrative remedies as to each claim that he seeks to present in court. See Jones, 549 U.S. at 219. Here, the Court first finds that Parson's

deliberate indifference claim against Defendant Beard is one of a medical nature and is separate and distinct from his excessive-use-of-force claims against Defendants Vanallen, Thompson, Robert, Duncan, Williams, Warner, Douglass, Lavoie, and Hewitt. Therefore, Parson was required to file a separate formal grievance of a medical nature at the institutional level to address his assertion that Nurse Beard neither cleaned Parson's facial wounds nor numbed the area before she stapled the wounds closed. The FDOC instructed Parson that his inadequate-medical-treatment issue "is a separate issue" that must be grieved "as such" at the "formal level." Doc. 1-3 at 1. Parson did not heed the warning. He never initiated a formal grievance about Beard's alleged medical mistreatment, see Doc. 1-3 at 1-21, and therefore, he failed to exhaust his deliberate indifference claim against Defendant Beard. As such, Defendants' Motion is due to be granted with respect to the exhaustion issue as to Parson's Eighth Amendment deliberate indifference claim against Defendant Beard.

Turning to Parson's deliberate indifference claim against Espino, the Court finds that this claim is closely related to and intertwined with the excessive-use-of-force claims against Defendants Vanallen, Thompson, Robert, Duncan, Williams, Warner, Douglass, Lavoie, and Hewitt. Parson asserts that Espino lied and tried to cover up Defendants' wrongdoing when he made a false notation in the medical record. The FDOC notified Parson that the subject of his grievance had been referred to the Office of the Inspector General. See Doc. 1-3 at 1. Logically, this would have included Parson's assertions against Espino for his involvement in the wrongdoing. Thus, the Court finds that Parson sufficiently exhausted the administrative grievance procedure as to his claim against Espino. As such, to the extent Espino sought dismissal of Parson's Eighth Amendment

deliberate indifference claim against him for failure to exhaust, the Motion is due to be denied.

## VI. Eighth Amendment Deliberate Indifference Claims

In his Complaint, Parson asserts that Defendant Espino violated his Eighth Amendment right when he made a false notation in the medical record stating that officers used force against Parson when he "reached for something on his left side." Complaint at 9. He also states that Espino instructed Nurse Beard to staple Parson's facial wounds closed to stop the bleeding. See id. at 7. Defendant Espino maintains that Parson fails to state a plausible Eighth Amendment claim against him because he treated Parson for his medical complaints and later instructed Nurse Beard to treat Parson's post-use-of-force facial injuries. See Motion at 7-8.

The Eleventh Circuit has explained the requirements for a claim of constitutionally inadequate care:

> "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." Farmer, 511 U.S. at 832, 114 S.Ct. at 1976 (internal quotation and citation omitted).[7] Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane conditions of confinement. Id. However, as noted above, only those conditions which objectively amount to an "extreme deprivation" violating contemporary standards of decency are subject to Eighth Amendment scrutiny. Hudson, 503 U.S. at 8-9, 112 S.Ct. at 1000.[8] Furthermore, it is only a prison official's subjective deliberate indifference to the substantial risk of serious harm caused by such conditions that gives rise to an Eighth Amendment violation. Farmer, 511 U.S. at 828, 114 S.Ct. at

---

[7] Farmer v. Brennan, 511 U.S. 825 (1994).

[8] Hudson v. McMillian, 503 U.S. 1 (1992).

> 1974 (quotation and citation omitted); Wilson, 501 U.S. at 303,
> 111 S.Ct. at 2327.[9]

Thomas v. Bryant, 614 F.3d 1288, 1306-07 (11th Cir. 2010). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citation and internal quotations marks omitted).

Brown, 387 F.3d at 1351. Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (describing the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing Farrow, 320 F.3d at 1245); Lane v. Philbin, 835 F.3d 1302, 1308 (11th Cir. 2016) (setting forth the three components) (citing Farrow, 320 F.3d at 1245).

---

9 Wilson v. Seiter, 501 U.S. 294 (1991).

15

> [T]he Supreme Court established that "deliberate indifference" entails more than mere negligence. Estelle,[10] 429 U.S. at 106, 97 S.Ct. 285; Farmer, 511 U.S. at 835, 114 S.Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, [11] 182 F.3d at 1255; Taylor,[12] 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46. Notably, the Supreme Court has stated that a plaintiff may demonstrate the deliberate indifference of prison officials by showing that they intentionally interfered with prescribed treatment or intentionally denied access to medical care. See Estelle, 429 U.S. at 104-05.

Parson asserts that Dr. Espino inquired about his "medical problems" during the medical examination until Officer Vanallen screamed "what are you doing Mr. Parson pulling out a knife on the doctor." Complaint at 5. According to Parson, Dr. Espino ceased medical treatment when Vanallen voiced his concern about a knife, and then after the

---

[10] Estelle v. Gamble, 429 U.S. 97 (1976).

[11] McElligott v. Foley, 182 F.3d 1248 (11th Cir. 1999).

[12] Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000).

16

officers' use of force against Parson, he instructed Nurse Beard to staple Parson's facial wounds closed to stop the bleeding. Id. at 7. Dr. Espino's notation in the medical record represents his observation of what he perceived during the medical examination. See Doc. 1-1 at 2 (noting that the inmate "appeared to go for something" hidden on his left side, and when confronted by the officers, a use of force ensued to subdue the inmate). In the Complaint, Parson avers that he never received a disciplinary report for "the said weapon" in the doctor's office that day. Complaint at 9. These allegations fail to identify any serious medical need to which Espino was deliberately indifferent.[13] Thus, taking Parson's allegations as true, as this Court must do, he fails to state a plausible Eighth Amendment deliberate indifference claim against Defendant Espino. As such, Defendants' Motion is due to be granted as to Parson's Eighth Amendment deliberate indifference claim against Defendant Espino.[14]

Therefore, it is now

**ORDERED**:

1. Defendants Espino and Beard's Motion to Dismiss (Doc. 53) is **PARTIALLY GRANTED** only to the extent that (1) Parson's Eighth Amendment claim against Defendant Beard is dismissed without prejudice for failure to exhaust his administrative remedies, and (2) Parson's claim against Defendant Espino is dismissed with prejudice

---

[13] To the extent Parson is complaining about the use of staples rather than sutures or some other procedure, such a complaint would be at most a claim of negligence or a disagreement with Espino's medical treatment choice, neither of which would be sufficient to state a claim of deliberate indifference to a serious medical condition.

[14] For this same reason, Defendant Espino's assertion of his right to qualified immunity would provide an alternative basis for dismissal.

for failure to state a plausible Eighth Amendment claim against him. Otherwise, the Motion is **DENIED**.

2. The Clerk shall terminate Dr. G. Espino, M.D. and Nurse Beard as Defendants in the case.

3. The Court will set deadlines for discovery and the filing of dispositive motions by separate order.

4. The parties are encouraged to discuss settlement, and notify the Court of their efforts **by December 12, 2019**. If the parties settle the case privately among themselves, they must notify the Court immediately.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of November, 2019.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

sc 11/12
c:
Davion Parson, FDOC # C09283
Counsel of Record